## Case No. 1,461.

### BLACK v. The LOUISIANA.

[2 Pet. Adm. 268.] [1]

District Court, D. Pennsylvania. 1804.

SEAMEN — INCOMPETENCY — DISHONESTY — INTEMPERANCE—WAGES—DISCHARGE—REINSTATEMENT.

1. Remnants of a ship's stores are not perquisites of the steward.

[Cited in The Mentor, Case No. 9,427.]

2. No amends can be made [by a steward] for disqualification.

[Cited in The Nimrod, Case No. 10,267.]

3. Cook and steward may sue as mariners yet in their duties are distinct.

[Cited in Allen v. Hallet, Case No. 223; Sheridan v. Furbur, Id. 12,761.]

[4. In what cases a master is justified in discharging a steward.]

[5. Cited in Hutchinson v. Coombs, Case No. 6,955, to the point that a master may discharge a steward who is guilty of gross dishonesty, as embezzlement or theft.]

[6. Cited in Sherwood v. McIntosh, Case No. 12,778, to the point that a master is justified in degrading or discharging a steward for habitual intemperance.]

[7. Cited in The Garnet, Case No. 5,244, to the point that the dismissal of a cook or steward incapable from drunkenness may be ratified with more latitude than that of mariners.]

8. The master is not compelled, after dismissal, to receive him again.

9. Casual offences may be overlooked, but confirmed and incorrigible vice is a disqualification.

In admiralty. A steward of a ship belonging to Philadelphia, was discharged, for malconduct, at Liverpool, in England, where the vessel had delivered her cargo, and earned her freight, for that section of the voyage. On the ship's arrival at Philadel-

[1] [Reported by Hon. Richard Peters, District Judge.]

phia, he sued for wages during the whole voyage. He alleged that he had been discharged, at the foreign port, without lawful cause. It appeared, in proof, that the steward had carried on shore, and sold, a considerable quantity of cabin-stores and provisions, which had been left on board by passengers. He had, by landing these articles, endangered the ship, under the revenue laws of that country.

For the steward, it was contended—1st. That the stores and provisions left on board by the passengers, were his perquisites. 2d. That if they were not, he had tendered amends and satisfaction, and offered to return to his duty, and should have been received, agreeably to the maritime law.

PETERS, District Judge. I am satisfied, on due enquiry, that the remnants of stores and provisions, are not perquisites of the steward. They commonly belong to the master, unless it is otherwise arranged, by the custom and usage in such cases. The passengers may, and often do select certain articles of extra stores, for their own disposal; I find no positive, or legal regulation on the subject, much less, any giving a property in such stores, to the steward. If the fact or law, were, as is contended in this cause by the steward's counsel, it would be his interest to stint the passengers, that he might possess the remnants. I consider the steward, as having been guilty of a flagrant breach of trust, and of embezzlement. There is no proof of tender of amends and satisfaction. Such tender and submission, would operate favourably to a mariner, having committed a pardonable fault; but no amends, or satisfaction, can be made, for a disqualification or incapacity.

Although the cook and steward are authorized to sue in the admiralty court, as mariners and part of the crew, yet I have distinguished their cases, as their duties are distinct from those mariners employed in navigating the ship. If the cook or steward is found incapable, from dishonesty, drunkenness, extreme filthiness, gross ignorance or negligence, to perfom their duty, I have often ratified their dismission, with more latitude than that of mariners who may know and do their duty, though guilty of temporary aberrations; and I have not deemed the master so rigidly bound to receive them though he may consent to the re-acceptance of their services. If a steward is an habitual drunkard, if he grossly wastes, purloins and sells, the stores committed to his charge, it is lawful for the master to dismiss him. He renders himself unworthy of further trust, and is unfit for so confidential a station. If dismissed, the master ought not to be compelled to receive him again. Disobedience, casual drunkenness, passionate or insolent behaviour, accidental negligence, or carelessness, may be overlooked and forgiven. During a long, or untoward passage

and with some masters as well as passengers, any passage is a trial of patience and temper: stewards are often the objects of acidities, arising from other causes than their own conduct. Cooks have also their share, of such acrimonious effervescences. These place them often in situations, to revolt against what they deem unmerited illtreatment; but it is their duty to suffer beyond the point of moderate forbearance. Amends may be made for offences, venial, or not inveterately vicious, and on submission, or tender of satisfaction, their services should be re-accepted. In such cases I have decreed wages; especially, when it required a more balancing, or nicely discriminating view of the subject than I desire to take, to determine who was most in fault. The solemnity of a contract, always should turn a doubtful scale.

But want of honesty is a disqualification, and not a pardonable fault in a steward, to whom are committed the necessaries, conveniences and comforts of those on board. His duties are peculiar, and separate from those of common seamen. His case cannot, in many respects, be considered within the reason and contemplation of the rules of the maritime laws, applicable to mariners committing faults. I decree wages to Liverpool, deducting the value of the articles embezzled.

This is another exception to the general rule of obligation to receive a repenting member of the crew, tendering his service and amends. This rule may be tested by its exceptions; exceptio probat regulam. There can be no amends for a radical disqualification. Although I have often decided, that a repenting mariner, discharged even for lawful cause, should be again received, agreeably to the law of Oleron; yet I have not so decided, without limitation. One shipping for a seaman, who was utterly ignorant and incapable, whether from want of nautical skill or disease, at the time of making the contract—one discharged as really dangerous to the peace and safety of the ship, or the property on board—notoriously dishonest and incorrigible—has never been held to be unconditionally entitled to a restoration to his contract. In such cases I have ratified the refusal of the master, to receive him, on any terms.