## THE COMET.

### (District Court, W. D. Washington, N. D. June 11, 1913.)

### No. 2,458.

SALVAGE (§ 18*)—PERSONS ENTITLED TO COMPENSATION—MEMBERS OF FISHING CREW.

    Libelants were fishermen, employed on a gasoline fishing schooner; their pay depending upon the weight of fish caught by them and sold to the owner. The schooner became disabled 40 miles from land, and libelants volunteered to take the ship's dory and compass and go to shore for assistance, which they did, leaving the master and others on board. The service was not extrahazardous, nor was the schooner abandoned. *Held*, that they bore such relation to the vessel that they were not in the position of salvors, and were not entitled to salvage compensation.

    [Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 31–43; Dec. Dig. § 18.*]

In Admiralty. Suit by M. Nilson and others against the gasoline schooner Comet; San Juan Fishing & Packing Company, claimant. On exceptions to libel. Exceptions sustained.

Charles A. Enslow, of Seattle, for libelants.
McClure & McClure, of Seattle, for claimant.

CUSHMAN, District Judge. This cause is for decision upon claimant's exceptions to the libel, which prays for a salvage award on ac-

count of alleged "extrahazardous services performed by libelants outside the scope of their employment." Libelants were fishermen aboard the schooner Comet. It is alleged that:

"The pay of such fishermen was dependent entirely upon the number and weight of the fish caught by them and sold to the owner of the vessel."

On July 2, 1912, 40 miles off Cape Flattery, on account of the breaking of her machinery, the schooner became helpless and uncontrollable, and the captain called for volunteers to go to shore for assistance. Libelants volunteered, and left in the ship's dory, with the ship's only compass, rowing first 30 or 40 miles to Tatoosh Island, thence about 4 miles further to Neah Bay, where they informed the United States government's vessel Snohomish of the facts, and libelant Hanson accompanied the Snohomish back and assisted in towing the Comet safely to port at Neah Bay. It is alleged that libelants' efforts alone saved the Comet from entire destruction.

A number of grounds for exception are assigned but it will only be necessary to consider the one contention; that is, that libelants are entitled to nothing upon the facts alleged.

Libelants rely upon the following authorities: The Occidental (D. C.) 101 Fed. 997; The Marie (D. C.) 49 Fed. 286; Ryan v. Hook, 34 Hun (N. Y.) 185; Hobart v. Drogan, 10 Pet. 108, 9 L. Ed. 363; The Minch (D. C.) 61 Fed. 511; Gilbraith v. Stewart Transp. Co., 121 Fed. 540, 57 C. C. A. 602, 64 L. R. A. 193; The Aguan (D. C.) 48 Fed. 320; The Blaireau, 2 Cranch, 240, 2 L. Ed. 266; The Cachemire (D. C.) 38 Fed. 523; The Hekla (D. C.) 62 Fed. 941.

In addition to certain authorities cited by libelants, claimant cites the following: The Ocean Spray, Fed. Cas. No. 10,412; Knight v. Parson, Fed. Cas. No. 7,886; United States v. Cutler, Fed. Cas. No. 14,910; Commonwealth v. Douglas, 17 Mass. 49; Bayley v. Merritt, 19 Mass. (2 Pick.) 598; The Minna (D. C.) 11 Fed. 759; The Barbara Hernster, 146 Fed. 732, 77 C. C. A. 158; The Carrier Dove, 97 Fed. 111, 38 C. C. A. 73; Kidney v. The Ocean Prince (D. C.) 38 Fed. 259; Phillips v. McCall, Fed. Cas. No. 11,104; Abbott on Shipping (14th Ed.) 965; Sappho v. Denton, 3 Law Reports, Privy Council, 694; Kennedy on Law of Civil Salvage, p. 76; Pritchard's Admiralty Digest, vol. 2, p. 1807; The Emulous, Fed. Cas. No. 4,480; The Pennsylvania, Fed. Cas. No. 10,945; Towle v. The Great Eastern, Fed. Cas. No. 14,110; Sinclair v. Cooper, 108 U. S. 352, 2 Sup. Ct. 754, 27 L. Ed. 751; The Margarethe Blanca (D. C.) 12 Fed. 728.

This exception must be sustained. It makes no difference whether libelants be considered, technically, members of the crew or not, they, with the owner of the vessel and the rest of its complement of men, were engaged in a common enterprise, the success of which depended upon the safety and good order of the schooner. When libelants helped the ship they helped themselves.

The major reason for the rule denying a crew salvage, except after abandonment of the ship, or after discharge of the crew, is to insure fidelity, as well as effort, on their part. Libelants could bring about the disability of the schooner with almost the same facility as members of the crew solely engaged in its navigation.

The schooner had in no sense been abandoned. The master and others of the crew remained aboard. The mere fact that the master called for volunteers to secure assistance and libelants answered the call would not effect their discharge, entitling them to salvage.

There is no showing that the service was of an extrahazardous nature, as in Hobart v. Drogan, 10 Pet. 108, 9 L. Ed. 363. It also appeared in that case that the libelant, a pilot, had completed his services as pilot, left the vessel, and gone about his business. A few hours afterwards the vessel went on the breakers in a storm and was abandoned before the salvage service was rendered.

The question in the present case has been decided by this court in the case of The Zapora, 205 Fed. 1004, decided January 15, 1912, by Judge Donworth, in which decision it was held:

"Under the authorities, I see no escape from the conclusion that the libelants bore such a relation to the ship, at the time of the occurrences described in the amended libel, that they were not in the position of salvors and are not entitled to salvage compensation. It is therefore ordered that claimant's exceptions to the amended libel be and they are hereby sustained."

Libelants seek to distinguish the decision in this case, because the Zapora was aground on a reef. It is concluded that that fact would not change the rule, as it does not bear upon the relation of libelants to the vessel.

Having reached this conclusion, it is not necessary to consider the effect of libelants' using the dory of the schooner and its only compass in going for assistance. Although not deciding the question, it may be inferred from the language used by the Supreme Court in its opinion in Sinclair v. Cooper, 108 U. S. 352, 358, 2 Sup. Ct. 754, 757 (27 L. Ed. 751), that this fact would, of itself, defeat libelants' right to salvage, for therein it is said:

"Yet a passenger is not, as the officers and crew are, bound to stand by the ship to the last; he may leave her at any time and seek his own safety; and for extraordinary services, and the use of extraordinary means, not furnished by the equipment of the ship herself, by which she is saved from imminent danger, he may have salvage.